Ark. La. Gas Company *v.* Wood

5-3888                                    403 S. W. 2d 54

Opinion delivered May 23, 1966

*Warner, Warner, Ragon & Smith, Jeta Taylor,* for appellant.

*Jack Yates,* for appellee.

Hugh M. Bland, Justice. This is an appeal from a judgment in the sum of $1,500.00 in favor of appellee, Robert C. Wood, for damages to his land and use of water from an artificial stock pond. Appellee owns a 160-acre stock farm near Cecil, Arkansas. On June 11,

1955 appellee executed an oil and gas lease on this tract of land to W. R. Stephens, d/b/a Stephens Production Company and Arkansas Louisiana Gas Company, for a term of 10 years. This lease provided in part: "Lessee shall have free use of oil, gas and water from said land, except water from Lessor's wells, for all operations hereunder." The lease further provided for reasonable use of the land in drilling operations. Appellee used the land as a stock farm, running about 50 head of cattle. Appellant began drilling operations in February 1963. According to appellee's testimony, appellant used about 4 acres of his land for a roadway and about 2 acres for the drill site. The road was built by the use of bulldozers and was about 40 feet wide. The timber was pushed back and piled up along the west side of the right-of-way. About the time operations started, representatives of the appellant asked and obtained permission of the appellee to use water from his stock pond provided such use did not destroy his use of the pond for watering his stock. The pond was pumped so low by appellant that it went dry about the 25th of May, 1963 and did not again contain stock water until about the 20th day of September, 1963. During this time appellee was forced to pump water from his well to water his cattle. Appellant dug another pond in 1963 at a location agreed upon by the parties, but it did not have water in it until late September 1963.

There was very little conflict in the testimony except appellant's testimony disputed the acreage used claiming the drill site to be 200 feet by 200 feet and the roadway about 15 to 20 feet wide. Appellant admitted use of storage site about 75 feet by 75 feet near the drill site but denied any unreasonable use of the land.

Both at the close of appellee's testimony and at the close of all testimony appellant moved for a directed verdict which motions were denied and exceptions saved.

For reversal appellant contends that the trial court erred in failing to direct a verdict for defendant because

appellee wholly failed to establish that appellant used more of the property than was reasonably necessary and that the court erred in submitting Instruction No. 9 to the jury.

We cannot agree with these contentions. It is true that an oil and gas lease gives with it the right to possession of the surface to the extent reasonably necessary to enable a lessee to perform the obligations imposed upon him by the lease. This includes the right to enter upon the premises and use so much of it, and in such manner, as may be reasonably necessary to carry out the terms of the lease and effectuate its purpose. 4 Summers Oil and Gas (1962), § 652, p. 2; 1 Williams, Oil and Gas (1959), § 7, p. 220; *Mid-Texas Petroleum Co. v Colcord*, 235 S. W. 710 (Tex. 1921); *Pulaski Oil Co. v. Conner*, 62 Okla. 211 (1916); *Union Producing Company & Cook Drilling Co. v. Pittman*, 146 So. 2d 553 (Miss. 1962).

In the case at bar the appellee produced substantial testimony as to the damage to his land and to use of the stock pond. His own estimate of the damage was $1,500.00 for unreasonable use of his land and $1,000.00 for the use of the water. Two of his neighbors thoroughly familiar with his land and cattle operation testified as to the damage, one of them fixing it at $1,000.00 damages for the unreasonable use of the land in the building of the road and $500.00 for the unreasonable use of land in the drill site. The other witness based his estimate of damages on what it would take to hire a bulldozer and operator to repair the damage and fixed the damage to the land at from $1,000.00 to $1,200.00 but did not fix any damages for loss of use of the water. Other substantial evidence was also introduced to show that more land was used than was reasonably necessary giving the appellee a cause of action for damages. See *Livingston v. Indian Territory Illuminating Oil Co.*, 91 F. 2d 833 (10th Cir. 1937).

In *Denver Producing & Refining Co. v. Meeker*, 188

P. 2d 858, (Okla. 1948), action was brought by the surface owner to recover damages from the lessee for the unreasonable use of the surface land. The lessor and other witnesses gave testimony which supported the claim but the defendant objected that none of the witnesses were in the business of producing oil and gas. In holding the evidence sufficient to support the verdict and judgment for the plaintiff, the court said:

> "We have heretofore held that in cases involving questions coming within the observation and experience of laymen, and upon which they were qualified to testify, they would be permitted to testify, and the weight and effect of their testimony be determined by the jury. * * * We think the witnesses produced by plaintiffs showed themselves sufficiently familiar with the use of the surface of the land for oil operations in the vicinity of the farm of plaintiffs to testify as to an unnecessary use thereof for roads, and for the hauling of equipment to and from the wells thereon."

On the question of whether the lessee had a right to use free of cost water on the land impounded in an artificial pond by the lessor for his use as stock water there is a division of authority. We do not find an Arkansas case directly in point but the Supreme Court of Oklahoma and the Supreme Court of Kansas have passed on oil and gas leases containing a similar clause. In the case of *Arnold* v. *Adams*, 147 Okla. 57, 294 P. 142, a clause in an oil and gas mining lease read as follows:

> "Lessee shall have the right to use, free of cost, gas, oil and water produced on said land for its operation thereon, except water from wells of lessor."

Commenting on this provision the Oklahoma court stated:

> "Clearly this does not mean that lessee was entitled

to use water from the private pond or tank of the lessor, but means water produced by lessee by drilling wells, building tanks, or ponds, or from running streams, etc. Otherwise, under such clause, an oil and gas lessee could enter upon the premises of the lessor and use all the water impounded by lessor for private use and thus deprive the lessor of water for his stock."

In the case of *Wyckoff* v. *Brown,* 135 Kan. 467, 11 P. 2d 720, an oil and gas lease provided that the lessee should have the right to use free of cost, gas, oil, and water produced on said land for its operations thereon except water from wells of lessor. The defendant lessor argued that he only intended to permit the use of any water flowing in a natural water course on the land to be used in drilling operations and that he did not intend to permit the use of water produced or conserved for watering his cattle either in ponds or wells. Commenting on the lessor's argument the court said:

"But the written contract did not say so. It only withheld the water in wells; and while an oil and gas lease should perhaps be strongly construed against the lessee, he being the author of its printed terms, the utmost liberality of construction would not permit a reservation of the 'water in the wells of the lessor' to include the water produced in an artificial pond on the leased premises."

In the Kansas case above the court did not have before it a complete record of the proceedings, a part of it being based on the remembrance of defendant's attorney. Under these circumstances the conclusion reached by the court does not appear to be logical.

This court agrees with the holding of the Oklahoma Supreme Court in *Arnold* v. *Adams, supra,* for to hold otherwise would permit the lessee in an oil and gas lease to drain the stock ponds of the lessor without being re-

sponsible for damage to the watering ponds for his stock.

The last contention of the appellant is that the court erred in giving Instruction No. 9 which reads as follows:

"You are instructed that the rights of the parties hereto are governed and are to be determined by the provisions of the lease introduced in evidence. You are instructed that the lease provides, in part, that the Lessee shall have free use of oil, gas, and water from said lands, except water from the Lessor's wells, for all operations hereunder; and it is for the Jury to determine what is a reasonable use and if the defendant had a right to take and to use the water."

An examination of this instruction leads us to believe that even if it were erroneous it was not prejudicial to appellant. *St. Louis & San Francisco Ry. Co.* v. *Crabtree,* 69 Ark. 134, 62 S. W. 64.

This court has held on many occasions that on appeal the supreme court views the evidence in the light most favorable to the appellee and affirms if there is any substantial evidence to support the jury's verdict. *Oliver* v. *Miller,* 239 Ark. 1043, 396 S. W. 2d 288. In that case the court cited with approval the holding in *Menser* v. *Danner,* 219 Ark. 130, 240 S. W. 2d 652 and *Jarrett* v. *Matheney,* 236 Ark. 892, 370 S. W. 2d 440.

There is no contention that the jury's verdict was excessive.

We are of the opinion that the judgment should be affirmed.